IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA BARRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROLLINS, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO.<br><br>　1:14-CV-2561-RWS　 |

## COMPLAINT

Plaintiff Lisa Barry, by and through undersigned counsel, brings this action against Defendant Rollins, Inc. and states and alleges as follows:

### NATURE OF THE ACTION

1. This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that Defendant failed to pay Plaintiff the correct amount of overtime wages.

### JURISDICTION AND VENUE

2. This Court exercises jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(B) because a substantial part of the events or omissions giving rise to Plaintiff's claims, as described in this complaint, occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Defendant is a for-profit corporation and maintains a principal office at 2170 Piedmont Road NE, Atlanta, Georgia 30324, according to its registration with the Georgia Secretary of State.

5. Defendant may be served with process by delivering a copy of the complaint and summons to its registered agent, The Prentice-Hall Corp. System, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

6. Defendant employed Plaintiff, who engaged in interstate commerce or the production of goods for interstate commerce.

7. Defendant has employees engaged in commerce or in the production of goods for commerce.

8. Defendant has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

9. In the years 2011, 2012, and 2013, Defendant's annual gross volume of sales made or business done was not less than $500,000.

## COUNT ONE: WILLFUL FAILURE TO PAY OVERTIME

10. At all times relevant to this action, Defendant has been a global consumer and commercial services company with over one billion dollars in annual revenue.

11. Defendant's various subsidiaries, including Orkin, HomeTeam Pest Defense, Western Pest Services, Orkin Canada, IFC, Trutech, ALLPEST, Waltham, and Crane provide pest control services and protection against termite damage, rodents, and insects directly to consumers.

12. Defendant's subsidiaries serve more than two million customers in the United States, Canada, Mexico, Europe, South America, Central America, the Middle East, the Caribbean, Asia, the Mediterranean, Africa, Mexico, and Australia from more than 500 locations.

13. Defendant creates, tests, and assists in the implementation of new technologies to enhance the services provided to consumers by Defendant's subsidiaries.

14. By way of example, Defendant introduced HomeSuite and BizSuite, which are proprietary iPad applications, throughout Orkin and Western Pest Services.

15. Plaintiff began her employment with Defendant in November 2011 as a ServSuite Implementation Manager in the Field Admin Support Group.

16. Defendant paid Plaintiff an annual salary of $62,000.00 during her tenure as a ServSuite Implementation Manager, which Plaintiff received biweekly in a fixed amount that was intended to compensate her for two regular forty-hour workweeks.

17. However, Plaintiff routinely worked in excess of forty hours per week.

18. When Plaintiff began working for Defendant, Defendant was in the process of developing and implementing the ServSuite application, a product used by Orkin employees at branch locations across the country.

19. Branch managers, service managers, customer service employees, and technicians were trained on the ServSuite product.

20. Even Defendant's corporate leadership received training in the ServSuite product.

21. None of Defendant's employees reported directly to Plaintiff when she began working as a ServSuite Implementation Manager.

22. At the outset of her employment, Plaintiff's primary responsibility was to learn Defendant's ServSuite application.

23. Plaintiff's job duties expanded once she became familiar with the ServSuite application.

24. By way of example, Plaintiff's additional duties included documenting the process used to train other employees in ServSuite.

25. Plaintiff also performed quality control tests on the training materials related to ServSuite.

26. On some occasions, Plaintiff provided technical support to branch and service managers and administrative personnel.

27. Plaintiff periodically assisted other implementation personnel when field technicians went live on ServSuite during rollouts.

28. On a few occasions, Plaintiff participated in training new implementation specialists.

29. In September 2012, Plaintiff was given the job title of Acting Quality Assurance Manager ("Acting QA Manager").

30. As Acting QA Manager, Plaintiff researched the system testing methods that were being used by Defendant and its contractors.

31. As Acting QA Manager, Plaintiff was required to conduct quality assurance and system testing for Defendant's subsidiary in Florida, which was converting from its legacy system to ServSuite.

32. Defendant paid Plaintiff an annual salary of $62,000.00 during her tenure as Acting QA Manager, which Plaintiff received biweekly in a fixed amount that was intended to compensate her for two regular forty-hour workweeks.

33. However, Plaintiff routinely worked in excess of forty hours.

34. In February 2013, Plaintiff's job title was changed to Quality Assurance System Tester ("System Tester"), which was applied retroactively to January 2013.

35. As a System Tester, Plaintiff's primary duty was to test the ServSuite product for quality control purposes.

36. For example, Defendant identified potential scenarios that its subsidiaries' branch and field personnel might face and then instructed Plaintiff to use the ServSuite product as if she were the end-user in those scenarios and to document the results of the test case.

37. Defendant paid Plaintiff an annual salary of $72,000.00 during her tenure as System Tester, which Plaintiff received biweekly in a fixed amount that was intended to compensate her for two regular forty-hour workweeks.

38. However, Plaintiff routinely worked in excess of forty hours.

39. For example, throughout her employment by Defendant, Plaintiff often worked on weekends.

40. Because she had a laptop that she took home, Plaintiff often worked at home.

41. Plaintiff rarely took meal breaks while working for Defendant.

42. Plaintiff consistently answered and returned phone calls outside of regular office hours.

43. Defendant chose not to record Plaintiff's work hours.

44. Though Plaintiff accessed Defendant's worksite using a badge, Defendant did not have a mechanism whereby Plaintiff could check into or out of work.

45. Defendant did not record the time each day when Plaintiff left the worksite.

46. Defendant did not record the hours Plaintiff worked from home.

47. Defendant did not record the hours Plaintiff worked at the branch locations of Defendant's subsidiaries.

48. Defendant failed to maintain accurate records of Plaintiff's hours worked.

49. Defendant violated the recordkeeping provision of the FLSA, 29 U.S.C. § 211(c).

50. Defendant failed to compensate Plaintiff for hours worked in excess of 40 per week at a rate of not less than one and one-half times her regular rate.

51. Defendant chose not to compensate Plaintiff at the required overtime premium rate despite Defendant's knowledge that failure to pay an overtime premium rate was a violation of the FLSA.

52. Defendant's decisions with respect to Plaintiff's compensation show a reckless disregard for Plaintiff's rights under the FLSA.

53. Moreover, Defendant lacked reasonable grounds for believing its pay practices with respect to Plaintiff comported with the requirements of the FLSA.

54. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

55. Pursuant to 29 U.S.C. § 216, Defendant is liable to Plaintiff for all unpaid overtime wages, liquidated damages, and attorney's fees and costs.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that:

I. The Court enter declaratory judgment in favor of Plaintiff;

II. The Court enter judgment against Defendants;

III. The Court enter judgment against Defendants that their violations of the FLSA were willful;

IV. The Court award Plaintiff all unpaid wages as provided for by the FLSA;

V. The Court award Plaintiff liquidated damages equal to the amount of all unpaid wages as provided for by the FLSA;

VI. The Court award Plaintiff reasonable costs and attorney's fees as provided for by the FLSA; and

VII. Plaintiff receive such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: August 7, 2014.

s/ John L. Mays

MAYS & KERR LLC
235 Peachtree Street NE
North Tower | Suite 202
Atlanta, Georgia 30303
Telephone: (404) 410-7998
Facsimile: (404) 855-4066
john@maysandkerr.com

John L. Mays, Esq.
Georgia Bar No. 986574

Counsel for Plaintiff